Whenever you're ready. Good morning. May it please the court. My name is Eitan Kaslianich and I'm representing Giselle Waterhouse in this appeal. Waterhouse has already been found to be disabled since March 12, 2014 as a result of the functional effects of her many impairments. So at issue here is whether or not she was disabled prior to March 12. And she was alleging an onset date of July 31, 2009 and truth be told, there's not a lot of evidence from 2009-2010 because she was not getting medical treatment. And ideally, the ALJ should be the one who figures out, well, she did figure out a date. She said she's disabled since this date. Well, the date's wrong. The record doesn't support that date. It certainly supports an earlier date. It's not entirely clear what date that should be. What date do you think we ought to make it? Well... We have to pick something. We do. We do. And I think that the evidence, what happens here is there's evidence beginning in January 2011 when she went to DVR to try to get help to see if she could find something, some kind of work she could do. And their counselor basically said, I don't think so, and then sent her on to apply for state disability, which she did. And we've then got records from June 2011 when she started seeing a Marjean Fields, which was her treating nurse practitioner. She felt that the combination of her impairments were disabling. Sorry, as of what date, March? Well, the first date that I think is relevant is January 2011 when Dr. I got that one. Yes. The next one is June 2011. Sorry. Okay. Thank you. When she saw Marjean Fields. Thank you. And then by October 2011, she was, I mean, you've read the file. There were some really unfortunate things going on that were making her extremely anxious. And that was an ongoing, a huge problem for her, making her just very fearful. And that's well documented in the record. She was getting counseling starting in October 31, 2011 was the first time she saw Ms. Hensley. Let me ask you this. Go ahead. Before we go through all this. If I were even to agree with you, could I make that determination on appeal? Yes, I think you can on this record. What case would allow me to do that? All the cases. I mean, I've got a case that says I think she should get benefits, but I couldn't find the case which says I can determine what the day is she starts. Well, I think that what would support that is all the cases that say, with regard to crediting evidence as true if the evidence was discredited. And if you credited as true the evidence prior to January 2011, we're not there. You can't, I don't think, you can't point to medical evidence at that point and say, well, look, all we have at that point is her testimony and her mother's testimony. And so it is, once again, this is why I started by saying ideally the ALJ would have done this, but they don't seem to be willing to. And so the reasoning that I have is, and I guess that's why I was stopping you, I'm not sure that I can do that. I might be able to send it back to the ALJ and say, hey, you made a mistake as it relates to what you did with Dr. Lyon, or you made a mistake as to what you did with the witness's testimony, or you made a mistake as to what you did with the non-physician provider, so go look again and find a date rather than me trying to make a date here. And I understand that predicament, and I agree with you that that's a challenge. You do have the ability to do it if, and as an example, if you look at Dr. Layton's report, for example, he's a treating rheumatologist, and he says for the, he doesn't make it clear that it's for the entire time he's been seeing her. That's one of the shortcomings in his opinion. But he does say that. That's a shortcoming in your proof, is it not? I mean, it's your burden to establish what the date is and how long he's been seeing her, and the consequence of that evidence is not the fault of the ALJ. It is, it falls upon the applicant, does it not? Well, it does. It does. But the thing is, Dr. Layton's opinion, if that's all that there was, then there is an ambiguity that I think is. So what is it you do want us to rely upon? Because it's pretty unusual for us to be even going down this path. We feel, I'll just, I feel like a fish out of water when you ask me to make a finding about an onset. And you started your argument by saying there's not a lot of evidence during this period. I'm saying that there's not prior, yes, exactly. Is it? What is it we would look to to say, ah, this is, here's the onset date. What is that? What's the ah-ha moment here? Well, what's the evidence? We're looking for. I think that the evidence is, it starts, like I say, it does start with January 2011. But once you hit June 2011, where the treating nurse practitioner felt that she couldn't work, and then progressing from there, the evidence just continued to demonstrate that. So the onset date as found earlier is clear error?  Excuse me, her alleged onset date? I think her alleged onset date, an ALJ could have ruled that she was disabled back to her alleged onset date. But I would not ask. 2009? Yes. An ALJ could have ruled that way based on the combination. That doesn't meet your burden, so. Based on the combination of the medical evidence and the testimony. But I'm not going to ask the court to ferret out, to do the ALJ's job, basically. Because that's what you would have to be doing. Now more than half of your time is gone. So what are you asking us to do, please? I am asking you to find her disabled, at least as of June 2011. From June 2011, the evidence is consistent. It consistently shows disability. In order to do that, you've got to suggest that the opinion of the ALJ to discount Dr. Layton's stuff was not supported by specific and legitimate reasons, correct? Correct. Well, the first one by the ALJ is Dr. Layton's treatment notes indicated improvement in symptoms, while I also included she was unable to work. I don't find any inconsistency here. I mean, I'm trying to figure out, I do find, as the ALJ does, inconsistency between the treatment notes, the opinion is specific and legitimate reason, and when evidence is susceptible to more than one rational interpretation, we have to uphold. I think the answer to that is that Dr. Layton, as a treating rheumatologist, summed up his opinion in his opinion letter, and that addresses why. That, I think, is the final word from Dr. Layton on what has been going on with her. So I have to ignore all of this? I mean, the next, the ALJ says he diagnosed fibromyalgia in the absence of a tender point examination and acknowledged that the etiology of her symptoms was unclear. Well, the treatment notes do indicate that Dr. Layton found tenderness, not in response to the tender point examination, but just to palpation. So, again, I have to agree that the ALJ is correct. And so I can't undo that, and he said that's exactly where it is. So I'm just going down through these. I mean, Waterhouse's activities were inconsistent with Layton's assessment that she couldn't perform light work. I guess I'm trying to figure out why is that not so? Unless I look at Revels v. Berryhill, which is our recent case. Exactly. Seems to discourage this as a reason. So I might be able to throw it out for that. What? What I'd like to mention is that it's not just what's in it. It's not just the medical evidence standing alone. The key evidence in this case is her description of her symptoms, and that was all discredited. And it always puzzles me a little bit when an ALJ finds a person not credible in their description of all these problems that they've been having for years, but then as of X date, suddenly they're credible. So if, in fact, there's some parts of the specific and legitimate reasons for discounting the opinion which I find to be legitimate, do I affirm the ALJ, even if I can't find all of their opinions or all of the reasons or not? No, because the ALJ's mistakes fully undermine her overall analysis, and it's not just Dr. Layton's opinion standing alone. There's Ms. Hensley's opinion. Well, I can go to these others. I mean, I can go to the germane reasons for the non-physician providers, and really the only one giving testimony regarding the symptoms and limitations, if you will, as to fibromyalgia was Marjean Fields. And the ALJ says Fields' account was inconsistent with the overall medical evidence of record discussed above, including her rather benign medical treatment notes and medical evidence showing that the claimant's pain and respiratory symptoms improved with medications. That's absolutely germane, and therefore satisfactory. And so, therefore, I don't know why I wouldn't discount all of those non-physician providers. Well, for one thing, under the new rules, ARNPs are now considered the same level of they get the same weight as a physician. But even setting that aside, there are no opinions here. It seems like what the ALJ has done here, and they're supposed to be evaluating the evidence, weighing the evidence, and what they've done instead is just come up with excuses for rejecting every treating and examining opinion. Isn't that called an assessment of the evidence and the coming to a judgment about whether to believe or accept that evidence, how much weight to give it? And that's the job of the ALJ. Frankly, this is about as thorough an opinion from an ALJ as I've seen in a long time. Well, it is the job of the ALJ, but their reasons have to pass Buster. They have to be within the legal reasons that are acceptable. Well, which ones do you think went beyond the pale here? I'm having trouble understanding from your brief what you really think, whether she went off the rail here. I think she went off the rail on, I don't like to put it that way, but on Dr. Layton's opinion as a treating rheumatologist. His opinion merited either controlling weight or, at the very least, deference. It got no weight at all. And I think the other one is on Ms. Hensley's opinion, who was her treating therapist, who saw her many times and was able to reach a conclusion about how dysfunctional she was as a result of her mental illness. Counsel, you're significantly over your time. I am. Thank you very much. All right. Do you want to just finish your answer? Were you done with that answer to that question? Am I done? Could I ask? Oh, of course, of course. Wait a minute. My colleague wants to. If you have other questions. No, I'm through. I have one more question. As it relates to discarding Waterhouse's testimony, her own testimony, we have to have clear and convincing reasons. There's no question that Waterhouse testified inconsistently regarding her educational history. And that seems to me to be a clear and convincing reason. Can I discard her testimony based on that alone? No, because there is some – What case says I can't? Well, Burrell, the reasons that you're going to be – you can reject her testimony about the GED issue, which is even – it's a red herring. It doesn't even affect anything in the actual analysis here. It does affect something because at this point, you're trying to decide whether she's credible or not, and she gave inconsistent testimony about that. If I disregard all the rest, and frankly, Revels gives me the idea that maybe I ought to disregard all the rest. So here I am with her educational history and a totally inconsistent testimony. Why can't I just say, okay, Waterhouse is incredible? I think there was some confusion in the record between whether or not – the difference between taking a GED and passing the GED. And the other thing is that she ended up going to college for three semesters. I mean, there's not even a question that she's got a high – you know, the equivalent of a high school education and that she attended college. She totally described that. So it's – that's – I just think it's like some sort of odd confusion in the record that I can't explain it to you, but I don't see how it justifies rejecting all of her testimony about all the problems she was having. Thank you, counsel. Thank you. You can plan, but we'll put one minute on the clock when you come back, although I think you're almost four minutes over. We'll hear from the government. Good morning, Your Honor. First, may it please the Court, I'm David Burdett representing Ms. Barry Hill, the acting commissioner of Social Security. As Judge Payne indicated, there has to be a date certain that the claimant is attempting to claim as her onset date of disability here. Now, the claim that was presented to the ALJ in the briefing at the district court and the briefing before this court was an onset date of July 31, 2009. And I guess Mr. Yonch is abandoning that here at oral argument because I heard him say June of 2011. I don't know quite what to make of that. I propose that we go with the ALJ's determination after looking at the record and giving us a 23-page decision as to her rationale that the onset date was, in fact, March 12, 2014. But as my question to him is, again, my question to you, Counselor, it seems to me that I have to go through what the ALJ did. And if the ALJ did not give specific and legitimate reasons for discounting the opinion of Dr. Layton or failed, if you will, to give germane reasons for discounting the opinions of the non-physician providers or failed to give clear and convincing reasons for Waterhouse's testimony, it seems to me I just send it back for the ALJ to make another decision as to why they picked that particular date. Isn't that what I do? That is what you do if the ALJ failed in any of those particulars, Your Honor. But she did give specific and legitimate reasons to reject the 2013 statement from Dr. Layton, and she did give germane reasons to reject the— When I have Revels versus Berryhill, and I read that decision, and we're dealing with fibromyalgia, and that's a tough, tough issue. I've encountered it in other cases now. It seems to me that some of these reasons the ALJ may have given are not specific enough to make the decision go based on Revels. So can you distinguish the Revels decision from this decision and say why I can continue to go on that? I don't know that I can distinguish it, Your Honor, but I think it fits in. I can distinguish the outcome because I think that it fits in under the standard. This decision fits in under the standards that we have in Revels because the ALJ here cites her activities of daily living, cites her improvement in symptoms that was documented in the treatment notes, cites—and particularly, this is the issue of fibromyalgia—cites the fibro diagnosis, the fibromyalgia diagnosis in the absence of a finding of the tender points and where the etiology is unclear, or the equivalent that the American College of Rheumatology sets forth. Well, for instance, the ALJ says that her activities were inconsistent with Dr. Layton's assessment that she couldn't perform or that she could not perform light work. And yet Revels would seem to discourage me using that reason on fibromyalgia, wouldn't it not? Yes, Your Honor. So I can't put that one in. The ALJ says Dr. Layton's opinion is inconsistent with the overall evidence of the medical record. That doesn't seem to be specific enough to be able to rely on that reason. But I think it is specific enough in this case. Just barely inconsistent with the overall? They didn't say why. But respectfully, Your Honor, take a look at the ALJ's decision. And the reason—well, I know you read it. But the reason why ALJ-ROSA eventually decided on March 12, 2014, as the earlier date when disability could be established, is specifically because of a later opinion of Dr. Layton on follow-up. Now, see, what he wants to rely on for an earlier date of disability, although even this would be a much later date than we just heard at oral argument, but the reason why he—the statement of Dr. Layton that he wants to rely on for establishing, in theory, an earlier date of disability, was a February 13 statement where Dr. Layton says her symptoms, quote, are consistent with the diagnosis of fibromyalgia and with a nonspecific syndrome of arthralgias. Even though her symptoms are not accompanied by visible evidence of inflammation, I believe her. But if I may, Your Honor— Not at all. We know that quote, and your point is? My point is that that's a pretty vague and unsubstantiated statement. But Dr. Layton saw her again, saw her on follow-up in May of 13, saw her on follow-up in December of 13. Medications are improving her symptoms throughout 2013. And then later in 2014, he sees her again on follow-up, and at this point in the record, there's an objective evidence. There's swelling in her wrists, and she says, I have a lack of grip strength, I'm having difficulty driving. And this is the point where Dr. Layton points to some specific evidence that says, yeah, her ability to handle, finger, and manipulate is different. And this is the point in the record that the ALJ looks at and says, aha, here we have some evidence, at last, of an earlier potential onset date of disability. Because she'd been found disabled as of August 30, 2014, by the second claim that she had brought after the first one was dismissed. And so this was the remand hearing of the first claim, where she claimed disability back to 2009. No evidence from 2009, 2010, or really 2011, 2012. The first evidence that is specific is the evidence that points to that date, March 12, 2014, and it's from Dr. Layton. So it goes to show, Your Honor, that the ALJ was looking at the whole record, the whole record that Dr. Layton had. The ALJ didn't just blow it off and say, oh, no, Dr. Layton is out to lunch. No, the ALJ is looking at Dr. Layton's record and saying, where does Dr. Layton point to something that I can hang my hat on and make a finding of disability? And she did, at the earliest possible point in the record. If we might, what about the disregard of Waterhouse's testimony? If I look at Revels, I'm having a tough time understanding why there is any real inconsistency except the inconsistency relating to the educational history. Because Revels allows inconsistency all over the place when it relates to fibromyalgia. So the only place where I can really bear in there really is an inconsistency that Revels doesn't get rid of is in that educational history. Now, can the ALJ have simply the idea that her inconsistency as to her educational history is enough to discard her testimony? Not in itself, no, Your Honor, but there's more. There is actually more. What more doesn't Revels get rid of? There's two more that Revels doesn't get rid of. One is because the other complaint, in addition to her hands, was shortness of breath, which is variously described as COPD or asthma. And it's really asthma because she went to the doctor and they said, you have asthma, and they said you need to stop smoking. She goes back to the doctor again, this is November 2011, and they say you have asthma and you need to stop smoking. She doesn't stop smoking. And this Court embraced that that was a permissible reason to fine. We also have testimony talking about smoking being an addiction and that this is not a great basis for credibility finding. That's true, Your Honor. So what's your third shock? But the third one, my third shock. How did you say that? Because I was just about to go for the third. My third one is that the ALJ cited the evidence of some improvement with medications, and that is also permissible for credibility finding. And that is from who's just – Wait, wait, wait. Permissible as a credibility finding? Yes. What? Evidence that there is improvement with treatment is also credibility, is also citable for the point of credibility to go against the claim that it didn't improve. Because she said she didn't improve. You mean, just to be clear that I'm understanding you, that you think that she, the claimant, was denying getting any relief. That's correct. And that there's medical evidence indicating that there was some improvement with treatment. Correct, Your Honor. If her assertion is that from 2009 forward or 2011 forward or 2013 or whatever it is today forward, that she had no improvement and didn't get any relief, there's evidence in Dr. Layton's notes that she did. And that's a permissible reason to cite. It's pretty tough, counsel, because this is a really long period of time that we're talking about. It's tough for everybody, you and opposing counsel, but it's a really long period of time that we're talking about, and it's sort of a downhill, two steps forward, one step backward, or maybe the other way around, two step backward, one step forward, kind of an analysis if you're talking about a progressive condition. So I'm not sure that that helps me a whole lot. Well, Your Honor, it is, and it's a progressive condition. And at some point, you know, it's a progressive condition, correct. And as with many progressive conditions that's – Intermittent relief. Forgive me. I know I'm interrupting, but I want to give you a chance to respond. And my point is, over this long period of time, just because, you know, she could be indicating that she had maybe periods of intermittent relief that's reported in the records. We've seen that a lot. But that overall she's not really improving. In fact, she's declining. So could you respond, and I promise I'll let you do so. And especially with fibromyalgia. And especially with fibromyalgia, Your Honor. That's a good question. Yeah, but I don't think that this – I don't think that we have anything to show that this is in reality a fibromyalgia case. Now, we do have a progressive decline, as we have with many conditions. And I guess I would just say that at some point in all of these Social Security disability cases, in any case where the fact pattern is like this, and there's a progressive condition, and at some point she does become disabled. Right. At some point earlier than that, she wasn't disabled. The burden of proof is on the claimant to come forward with evidence to establish that earlier onset date of disability. Whether they claim – whatever date that they may claim it may be, the burden of proof is on the claimant to demonstrate that. Thank you, counsel. We appreciate your argument and your patience with us. Thank you, Your Honors. Sir, we're going to put another minute on the clock for you because we took you over. The important thing, I think, to mention is that the ALJ did not even find that her fibromyalgia was a medically determinable impairment. If an impairment is not even medically determinable, they literally can't ignore everything you have to say about it because it doesn't even exist. Well, Dr. Leighton is a treating rheumatologist. He says she's got fibromyalgia. I think that's the erroneous finding from the ALJ that undermines her entire analysis. That's why she didn't have to go into what did Dr. Leighton actually see. And right from the moment he first saw her in March 2012, he noted that she arose from a chair with caution. She had a slow and guarded gait. And his notes proceed like that. There's always something that he notices, and I think that's the underlying thing. And with regard to meds, she wouldn't take meds. She's been allergic to meds, and she's afraid of meds, and she won't take meds. Does that mean that the onset date, then, in your view, is March of 2012 now, where he acknowledges there are actually symptoms of fibromyalgia? I think that's the most persuasive date, but because he's a treating rheumatologist, it's a higher level of expertise than you're going to find from a nurse practitioner. But the challenge, I think, for the court is the ALJ never even looked into any of the effects of the fibromyalgia. That was undermining everything that she did because she didn't think it even existed. And if it doesn't exist, she doesn't have to consider it. If she doesn't consider it, there's nothing here. But the reason there was no fibromyalgia diagnosis that the ALJ referred to consider was that she discounted Dr. Leighton's diagnosis that was done without the proper test. Isn't that right? Well, it was done without him describing the proper test, but there was the subsequent doctor. But he didn't. There's no evidence that he did the test, is there? There's no clear evidence that he did the test, no. He describes that she's got symptoms consistent with fibromyalgia. He's a rheumatologist. He knows how to diagnose fibromyalgia. He knows what the criteria are. Thank you, counsel. Thank you both for your very helpful arguments. We'll take a short recess. We'll take this case under advisement, and we'll stand in recess for 10 minutes. All rise. This court stands adjourned.
judges: N.R. Smith, Christen, Payne